UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No.:

TYRONE 22, LLC, a foreign limited
liability company,

      Plaintiff,

v.

FOCUS DEVELOPMENT, LLC, a Florida
limited liability company,

      Defendant.

_____/

## COMPLAINT

    Plaintiff, TYRONE 22, LLC ("Tyrone"), through its counsel, sues FOCUS

DEVELOPMENT, LLC ("Focus"), and alleges:

## JURISDICTION, PARTIES AND VENUE

    1.    This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because

Plaintiff and Defendant are citizens of different states.

    2.    Tyrone is a South Carolina limited liability company with its principal place of

business in South Carolina, making it a citizen of South Carolina.  Tyrone has two

members/managers, SNAPFINGER BP, LLC and JCF RE Holdings, LLC, both of which are South

Carolina limited liability companies with principal places of business in South Carolina, making

each a citizen of South Carolina.  SNAPFINGER BP, LLC's sole member/manager is C. Donovan

Smith, who resides and is domiciled in South Carolina, making him a citizen of South Carolina.

Likewise, JCF RE Holdings, LLC's sole member/manager is John Cooper Fowler, who also resides

and is domiciled in South Carolina, making him a citizen of South Carolina.

    3.    Focus is a Florida limited liability company with its principal place of business in

Odessa, Pasco County, Florida, making it a citizen of Florida.  Focus' sole member or manager also

resides and is domiciled in Odessa, Pasco County, Florida, making him a citizen of Florida.

4.    The causes of action alleged herein fall within the jurisdictional limits of the Court because Tyrone seeks to recover more than $75,000.00 from Focus, exclusive of interest and costs.

5.    Venue is appropriate in this Court because Focus' principal place of business and/or the property that is the subject of this action is located within the boundaries of the Middle District of Florida, and because Focus' principal place of business and/or the property that is the subject of this action is located within one or more of the counties within the province of the Tampa Division of this Court.

### FACTS

6.    On or about August 11, 2016, Tyrone and Focus entered into AIA Document A101-2007, Standard Form of Agreement Between Owner and Contractor, which incorporated, among other documents, AIA Document A201-2007, General Conditions of the Contract for Construction (collectively, the "Contract"), for a construction project located at 2201 & 2205 Tyrone Blvd. N, St. Petersburg, Florida ("Project").  A copy of the Contract is attached hereto and incorporated herein as **Exhibit "A."**

7.    Section 9.3.1.2 of the Contract provides that "Applications for Payment shall not include requests for payment for portions of the Work for which [Focus] does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom [Focus] intends to pay."

8.    Under section 9.3.3, Focus warrants that

> [U]pon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from [Tyrone] shall, to the best of [Focus'] knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of [Focus], Subcontractors, material suppliers, or other persons or entities making a claim by reason of having performed labor, materials and equipment relating to the Work.

9. The Contract further provides that "[Focus] shall pay each Subcontractor no later than seven days after receipt of payment from [Tyrone] the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to [Focus] on account of the Subcontractor's portion of the Work." Contract, § 9.6.2.

10. In connection with its work on the Project, Focus submitted several Applications and Certifications of Payment to Tyrone where it certified the current payment due and that

> To the best of [Focus'] knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by [Focus] for Work for which previous Certificates for Payment were issued and payments received from [Tyrone], and that current payment shown herein is now due.

11. Focus executed a Waiver and Release of Lien Upon Progress Payment with each payment application, which provides, among other things, that

> The undersigned lienor further represents and warrants, and hereby certifies, that all just and lawful billings, accounts and/or amounts due from the undersigned lienor and/or its subcontractors or suppliers of labor, services, material, equipment or supplies employed in the performance of this contract have been fully paid in accordance with the terms and conditions of said contract(s) and that there are no amounts for which the undersigned lienor would be responsible, all amounts having been fully paid and other terms of the relevant subcontract, materials supply contract, invoice, or purchase order having been fully complied with by the undersigned.

12. In its March 31, 2017 Application and Certification for Payment Number 5 ("Pay Application 5"), Focus asserted it was due $571,479.51, and that it had paid all amounts for Work "for which previous Certificates for Payment were issued and payments received from [Tyrone] . . . ." Thus, as of Pay Application 5, the balance to finish the Project, including retainage, totaled $125,861.02.

13. Through two electronic wire payments on April 4 and April 20, 2017, Tyrone paid Focus $571,479.51 as part of Pay Application 5.

14.     On July 20, 2017, Focus executed a Waiver and Release of Lien Upon Progress Payment acknowledging its receipt of $571,479.51, and further certified that, among other things, all amounts have been fully paid in accordance with the Contract and "that there are no amounts for which [Focus] would be responsible, all amounts having been fully paid and other terms of the relevant subcontract, materials supply contract, invoice, or purchase order having been fully complied with by [Focus]."

15.     Subsequently, numerous subcontractors, materialmen, and/or suppliers on the Project (collectively, "Lienors") have recorded claims of lien against Tyrone's improved real property underlying the Project.

16.     As of November 6, 2017, a total of fourteen (14) claims of lien had been recorded against the improved real property, totaling $273,781.42, despite their being only $125,861.02 left in Contract balances.

17.     In all but one claim of lien, the lienor's last day of work predated Focus' July 20, 2017 Waiver and Release of Lien Upon Progress Payment, meaning Focus' March 31, 2017 certification and the July 20, 2017 Waiver and Release of Lien Upon Progress Payment were false.

18.     As a result, Tyrone has received demands for payment from certain of Focus' subcontractors and/or suppliers with regard to labor, material and/or supplies they provided on the Project for which Focus had failed to pay.

19.     Among other damages and losses, Tyrone has been forced to pay $64,326.36 to F.L.A. Electric & Design, Inc., $42,500.00 to Central Florida Landscaping, Inc., and $6,406.35 to Rosen Materials, LLC, in order to remove the liens and encumbrances against Tyrone's property on account of labor, materials and/or supplies furnished on the Project for which Focus failed to pay.

20.     Tyrone made repeated demands to Focus that it satisfy of record each recorded claim of lien and furnish satisfactory evidence that there are no longer encumbrances on Tyrone's

improved real property.

21.     Tyrone also demanded that Focus furnish a contractor's final payment affidavit in accordance with section 713.06(d)(d), Florida Statutes, and a list of all subcontractors and suppliers who may have a contract with Focus in accordance with section 713.165, Florida Statutes.

22.     Focus has failed and/or refused to satisfy of record the claims of lien recorded against Tyrone's improved real property, furnish a contractor's final payment affidavit or list of subcontractors and suppliers that it has contracted with in regard to the Project, and/or otherwise comply with its obligations under the Contract.

23.     On November 6, 2017, Tyrone sent a Notice of Default to Focus.  Focus has not responded to the Notice of Default.

24.     As a result, Tyrone has been forced to retain the undersigned attorneys to represent it in this action, and is obligated to pay these attorneys a reasonable fee for their services rendered.

25.     All conditions precedent to bringing this action have been performed or, in the alternative, have occurred or been waived.

### COUNT I
**(Breach of Contract)**

26.     Tyrone realleges and incorporates paragraphs 1 through 25 above as though fully set forth herein.

27.     Tyrone and Focus entered the Contract on or about August 11, 2016.

28.     The Contract provides that "Applications for Payment shall not include requests for payment for portions of the Work for which [Focus] does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom [Focus] intends to pay."

29.     Section 9.3.3 of the contract provides that Focus warrants that

> [U]pon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from [Tyrone] shall, to the best of [Focus'] knowledge,

5

information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of [Focus], Subcontractors, material suppliers, or other persons or entities making a claim by reason of having performed labor, materials and equipment relating to the Work.

30.     The Contract further requires Focus to pay Subcontractors amounts to which they are entitled no later than seven (7) days after receiving payment from Tyrone.

31.     The Contract additionally provides Tyrone the right to "request written evidence from [Focus] that [it] has properly paid Subcontractors and material and equipment suppliers amounts paid by [Tyrone] to [Focus] for subcontracted Work." Contract, § 9.6.4.

32.     Focus breached the Contract by, among other things: (1) failing to properly and/or timely pay subcontractors and suppliers amounts to which they are entitled, after receiving payment from Tyrone; (2) improperly submitting applications for payment without the intention to pay subcontractor's or material suppliers the amounts to which they are owed; (3) misrepresenting that all work for which certificates of payment have been previously issued and payments received are free and clear of liens, claims, security interests or encumbrances; and/or (4) failing and/or refusing to provide Tyrone evidence that it has properly paid all subcontractors and/or material and equipment suppliers.

33.     As a direct and proximate result of Focus' breaches of the Contract, Tyrone has been damaged.

WHEREFORE, Tyrone respectfully requests that this Honorable Court enter judgment against Focus for damages, interest, costs, and expenses, and such further relief as this Court deems just and proper.

## COUNT II
### (Specific Performance)

34.     Tyrone realleges and incorporates paragraphs 1 through 25 above as though fully set forth herein.

35.     Focus has failed and/or refused to properly pay the Lienors, its subcontractors and/or suppliers on the Project, and/or provide Tyrone evidence of proper payment of same.

36.     As a result, Tyrone has been forced to pay the Lienors amounts to which they claim they are due in order to remove the encumbrances on its property, notwithstanding the fact that Tyrone already paid such amounts to Focus in accordance with Focus' applications for payment, which amounts Focus then failed to pay over to the Lienors.

37.     Tyrone has suffered, and will continue to suffer, various kinds and natures of liability, loss, and expense as a result of Focus' failure(s) and/or refusal(s) to abide by its obligations under the Contract and the law.  Tyrone reasonably fears that it will incur further liability, loss, and expense as a result of other potential lienors encumbering its property on account of non-payment from Focus.

38.     Tyrone made repeated demands that Focus satisfy of record each recorded claim of lien and furnish satisfactory evidence that there are no longer encumbrances on Tyrone's improved real property.

39.     Focus has, however, failed and/or refused to comply with Tyrone's demands and has otherwise failed and/or refused to comply with its obligations under the Contract.

40.     If the requested relief is not granted, Focus may dispose of or otherwise divert, dissipate or misuse the amounts that Tyrone paid it, which amounts Focus was required but failed and/or refused to pay over to the Lienors and/or other of its subcontractors and suppliers on the Project, thereby preventing Tyrone's access to such monies for discharging Focus' obligations.

41.     Tyrone's current monetary exposure as a result of Focus' actions and/or inactions is

significant.

42.    Tyrone has no adequate legal remedy to enforce its rights and will be irreparably harmed if Focus is not required to comply with its obligations under the Contract and the law.

43.    The Contract is just and reasonable and supported by adequate consideration.

44.    The terms of the Contract are sufficiently clear, definite, and certain to allow enforcement by this Court.

45.    The performance that Tyrone seeks is substantially identical to that promised in the Contract.

WHEREFORE, Tyrone respectfully requests that this Honorable Court enter a decree and immediate order of specific performance compelling Focus to:

a.    Refrain from disposing of or otherwise, diverting, dissipating or misusing the amounts that Tyrone paid it, which amounts Focus was required but failed and/or refused to pay over to the Lienors and/or other subcontractors and suppliers on the Project;

b.    Render Tyrone a full and complete accounting of all amounts that Focus has paid to its subcontractors and suppliers on the Project;

c.    Honor all further agreements and obligations contained in the Contract; and

d.    Granting such further relief as this Court deems just and proper.

## COUNT III
### (Exoneration)

46.    Tyrone realleges and incorporates paragraphs 1 through 25 above as though fully set forth herein.

47.    Focus has failed and/or refused to satisfy its obligations under the Contract and/or its subcontracts or agreements with various subcontractors and suppliers to pay said subcontractors and suppliers for labor, services, material, equipment or supplies furnished on the Project.

48.    Tyrone is not attempting to avoid its secondary liability to any of the Lienors and/or

8

other subcontractors and suppliers for the reasonable value of labor, services, material, equipment or supplies furnished on the Project, to the extent it is demonstrated they are owed such monies.

49.    Instead, Tyrone demands that Focus be compelled to fulfill its obligations to Tyrone by satisfying the Lienor's claims of lien and indemnifying Tyrone.

50.    Under the doctrine of exoneration, Tyrone is entitled to have Focus exonerate it for all amounts that Tyrone has paid and/or incurred as a result of Focus' failure to properly pay the Lienors and/or its other subcontractors and/or suppliers, and is, therefore, entitled to an Order from this Court requiring that Focus place funds or other security with Tyrone, and for such further amounts as appropriate.

WHEREFORE, Tyrone respectfully requests that this Honorable Court enter an Order compelling Focus to exonerate Tyrone by fulfilling its primary obligations to the Lienors and/or other subcontractors and suppliers, and to place Tyrone in funds sufficient to reimburse it for the losses it has already suffered.

## COUNT IV
### (Fraudulent Misrepresentation)

51.    Tyrone realleges and incorporates paragraphs 1 through 25 above as though fully set forth herein.

52.    In Pay Application 5, Focus knowingly and intentionally misrepresented that it was due $571,479.51, and/or that it has paid all amounts for Work "for which previous Certificates for Payment were issued and payments received from [Tyrone] . . . ."

53.    At the time, Focus knew or should have known that such representations were false.

54.    Focus intended that such representations would induce Tyrone to act on them and pay it the $571,479.51 that it asserted it was due.

55.    In reliance on Focus' representations, Tyrone paid Focus $571,479.51 in accordance with Pay Application 5.

56.     Thereafter, on or about July 20, 2017, Focus executed a Waiver and Release of Lien Upon Progress Payment acknowledging receipt of payment of $571,479.51, and further knowingly, intentionally, and fraudulently misrepresented, warranted, and certified that, among other things, all amounts have been fully paid in accordance with the Contract and "that there are no amounts for which [Focus] would be responsible, all amounts having been fully paid and other terms of the relevant subcontract, materials supply contract, invoice, or purchase order having been fully complied with by [Focus]."

57.     At the time thereof, Focus knew or should have that such representations were false, and intended that such representations would induce Tyrone to act on them.

58.     As a direct and proximate result of Focus' fraudulent misrepresentations, Tyrone has been damaged and otherwise has suffered loss, liability and expense.

WHEREFORE, Tyrone respectfully requests that this Honorable Court enter judgment against Focus for damages, interest, costs, and expenses, and for such further relief as this Court deems just and proper.

*s/ Ty G. Thompson*
TY G. THOMPSON, ESQ.
Florida Bar No. 0585041
Email: tthompson@mpdlegal.com
Secondary:  hhowell@mpdlegal.com
ROBERT C. GRAHAM, JR., ESQ.
Florida Bar No. 105951
Email: rgraham@mpdlegal.com
Secondary: jseymour@mpdlegal.com
MILLS PASKERT DIVERS
100 North Tampa Street, Suite 3700
Tampa, Florida 33602
813-229-3500 – telephone
813-229-3502 – facsimile
*Counsel for Tyrone 22, LLC*